# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Fredrick DeWayne Hines,

                Plaintiff,

v.

Minnesota Department of Corrections;
Tom Roy; Shane E. Wernsing; Lon
Augdahl; Stephan Cranna; Michelle
Smith; David Rheisus; Sherlinda Wheeler;
Deborah MacNeill; Eric Nelson; Hannah
Lindeman; Elizabeth (Beth) Strunk; Mary
Spaniol; Lindsey Jennelle; Cynthia
Herme; Diane Medchill; Carlirae
Ronning; Mary A. Bergstad; Matthew
Marsh; Andy DuBois; Nanette Larson;
Barb Manor; Elaine Crowern; Carla
Thompson; Kathy Reid; Brenda Smith;
Katherine Uhl; Jamie Peterson; Coleen
Loucks; Danielle Kenyon; Truman Clate;
Dana Hill; Bronson Austrenge; Brian
Bradley; "Lt. Unknown Hagen (CX-5 &
MHU-CX-4) (PREA Investigator)"; Chad
Oye; Jeffrey Gutzmer; "Sgt. S. Swanson
(CX-5)"; Tim Farmer; Matthew Johnson;
Glen Lisowy; "Sgt. Unknown Bikney
(CX-5)"; "Sgt. Unknown Grandstand
(CX-5)"; Lon Hovak; Craig Thacker; "D.
Strickland (CX-5)"; "Unknown Uhl (CX-
5)"; Bret Rangstich; "Unknown Kosh
(CX-5 & MHU-CX-4)"; Victor Torres;
"Unknown Jackson (CX-5 & CX-4)";
Adam Perry; "J. Priase (CX-5; CX-4)";
Brain Rhor; "J. Fredrick (CX-5 & MHU-
CX-4)"; "Unknown Minneto (CX-5 &
MHU-CX-4)"; "Unknown Graves (CX-5
& MHU-CX-4)"; Mic Klin; Brandon
Huynh; "J. Smith (CX-5, CX-4)";

Civ. No. 18-3250 (ECT/BRT)

## REPORT AND
## RECOMMENDATION

Anthony Crea; "Unknown O'Neill (ACU,
CX-5 & CX-4)"; Doug Witte; "Unknown
O'Neill (CX-5-MHU, CX-4 & ACU-
Unit)"; "A. Yates (CX-5 & CX-4)";
James Toughy; and "Inmate (Drama) CX-
4",

                        Defendants.

Fredrick Dewayne Hines, OID # 245045, MCF-Oak Park Heights, *pro se* Plaintiff.

Keith Ellison, Esq., Attorney General; Jeffrey K. Boman, Esq., Assistant Attorney General, counsel for State Defendants.

Joseph A. Gangi, Esq., and Daniel J. Bellig, Esq., Farrish Johnson Law Office, counsel for Shane E. Wernsing.

BECKY R. THORSON, United States Magistrate Judge.

      In this action, *pro se* Plaintiff Fredrick Dewayne Hines, a prisoner confined at the Minnesota Correctional Facility in Oak Park Heights, Minnesota ("MCF-OPH"), alleges claims under federal and state law against nearly one hundred defendants, all in their official and individual capacities. (*See* Doc. No. 1, Compl.) Before the Court are the State Defendants' Motion to Dismiss (Doc. No. 88), Defendant Shane Wernsing's Motion to Dismiss (Doc. No. 66), Plaintiff's Motion for Leave to File a First Amended Complaint (Doc. No. 141), and Plaintiff's Motion to Present Exhibit B (Doc. No. 153).

      For the reasons that follow, this Court recommends that (1) State Defendants' Motion to Dismiss be granted; (2) Defendant Wernsing's Motion to Dismiss be granted; (3) Plaintiff's Motion for Leave to File a First Amended Complaint be denied; and (4) Plaintiff's Motion to Present Exhibit B be denied.

## I.    Background

In August 2018, Eric Nelson—the Psychological Services Director at MCF-OPH

petitioned for Plaintiff's civil commitment. (*See* Doc. No. 1-1, Nelson Pet. for Judicial

Commitment 7–8.) Nelson's Petition explained that Plaintiff was believed to be mentally

ill, citing in particular Plaintiff's abusive, threatening, and agitated behavior with security

staff and his repeated reports of sexual abuse at the hands of staff. (*Id.*) The facility's

Health Services had been unable to identify any physical evidence aligning with

Plaintiff's reports. (*Id.*) Nelson's petition was supported by a Petition from Deborah

MacNeill, a psychiatrist at MCF-OPH, and a screening report. (*See* Doc. No. 1-1,

MacNeill Pet. for Authorization to Impose Treatment 9; Doc. No. 1-1, Pre-Pet. Screening

Report 10–12.)

On September 18, 2018, these Petitions were heard in Washington County District

Court. (*See* Doc. No. 101, Ord. for Commitment 21.) The court heard testimony from the

court-appointed examiner, Dr. Shane E. Wernsing (who is a named defendant in this

case), and received his written report along with other exhibits into evidence. (*Id.*) The

court subsequently ordered Plaintiff committed to the Commissioner of Corrections to be

held in the Mental Health Unit of MCF-OPH and authorized the administration of

neuroleptic medications to Plaintiff. (*Id.* at 26.) In so doing, the court made the following

findings of fact:

> 5.    [Plaintiff] suffers from a major mental illness, specifically,
> Delusional Disorder, persecutory type, which constitutes an organic
> disorder of the brain or a substantial psychiatric disorder of thought, mood,
> perception, orientation, or memory which grossly impairs judgment,
> behavior, capacity to recognize reality, or to reason or understand.

6.      [Plaintiff's] mental illness has manifested itself by the following instances of grossly disturbed behavior or faulty perceptions: the Respondent suffers from persistent paranoid delusions, specifically, that he is repeatedly being raped by prison staff and that anyone working for the "state" is conspiring against him.

. . .

14.      The record reflects no social, cultural or religious reasons that would constitute a basis for [Plaintiff's] objection to the use of [neuroleptic] medication.

(Ord. for Commitment 3–4.) On March 22, 2019, a second hearing was held on whether to extend Plaintiff's civil commitment by twelve additional months. (*See* Doc. No. 92-1, Ord. for Extension 1.) That court affirmed and extended the September 2018 court order, finding that, among other things, Plaintiff is "responding well to the neuroleptic treatment." (*Id.* at 4.)

Plaintiff filed this action on November 26, 2018.[1] (*See* Compl.) The primary focus of his Complaint is that he was repeatedly raped by guards and inmates while in custody, that he was denied medical treatment made necessary by these attacks, and that

---

[1]      This case is Plaintiff's third attempt to litigate aspects of his confinement in federal district court, his first two having failed to survive their respective defendants' motions to dismiss. In the first matter, *Hines v. Roy*, Plaintiff alleged various constitutional violations and sought relief in the form of a transfer to a different prison, removal of his segregation status, and monetary damages. *See* No. 16-CV-352 (DSD/SER), 2016 WL 7163589, at *3–4 (D. Minn. Nov. 14, 2016), *report and recommendation adopted*, No. 16-CV-352 (DSD/SER), 2016 WL 7155738 (D. Minn. Dec. 7, 2016). And in the second, *Hines v. Smith*, Plaintiff alleged a conditions-of-confinement claim under the Eighth Amendment and sought a prison transfer, declaratory judgment, injunctive relief, and monetary damages. *See* No. 16-CV-3797 (DSD/SER), 2018 WL 7050674, at *1 (D. Minn. Dec. 20, 2018), *report and recommendation adopted*, No. CV 16-3797(DSD/SER), 2019 WL 234778 (D. Minn. Jan. 16, 2019), *appeal dismissed*, No. 19-1358, 2019 WL 3948366 (8th Cir. July 8, 2019).

4

Defendants subsequently conspired to cover up these attacks by having Plaintiff falsely

diagnosed as mentally ill, civilly committed, and prescribed improper medications. (*See*

*id.*) Plaintiff's Complaint is twenty-eight pages long and includes over one hundred

numbered paragraphs. (*See* Compl.) The allegations detailing the alleged rapes,

conspiracy, and alleged cover-up are as follows:

25. Plaintiff Hines reported to the United States District Court that he
was raped and requested the hospital on 9/4/17 and on 9/5/17 Lt.
Chad Oye escorted both RN's Chong Lor and Katherine Uhl to Cell
#149 to get report of rape.

26. Sgt. Jeffrey Gutzmer covered-up this account of rape and when
asked to report it stated: "I'm not telling anybody," then stated: "I
know people with psychological problems at which point
referencing me . . . [he] denied me medical, and stated let me call
"mental health." After I discovered semen on my feces while housed
in ACU-unit. Cell #149

27. On 11-14-17 I was transferred to MCF-Rush City, CX-IW Cells 234
& 228 reported rape, and mental health campaigne [sic] begun. Mary
A. Bergstad began to address the stress & anxiety I as experiencing
from the lack of support, assistance and medical intervention.

28. It was in Rush City, Lt. Peterson named in rape complaint stated:
"Aren't you a little crazy, I retorted: "no I am not."

29. [Defendants] gave an assessment of delusional disorder, some
including Hannah Lindeman approached and talked to me like I was
crazy, unconcerned and aquating [sic] a mental health issue to a rape
victim.

. . .

31. On 1-25-18 Hines 3rd retaliatory transfer from MCF-Rush City back
to MCF-Oak Park Heights, at which time Sgt. Tim Farmer and Lt.
Unknown Hagen did under threat, force me into CX-4 the mental
health unit.

. . .

33.     On 1-25-18 a corr. Officer Jackson stated at or around 1:00AM standing in MHU-unit, that "we want his" door opened at night, not every night, but when they ask." This he told the night bubble officer[.]

. . .

34.     It was at this point Hines was raped repeatedly in MHU-unit reported to Eric Nelson, Cynthia Herme; & Mary Spaniol. Security, rape suspects gay mae guards, A. Perry; C. Thacker; V. Torres; S. Stanley; J. Gutzmer; G. Lisowy; M. Johnson; K. Fisher; B. Huyne; Jackson; J. Priase, stopped investigations, and Hagen; Austrenge, B; both equated unfounded for 2 ½ months Hines was being raped by both guards and inmates in MHU CX-4 unit, a mental health unit.

35.     Hines was attacked by A. Perry; J. Priase; V. Torres; M. Klin; J. Smith; given false disciplinary reports. Both Prisae & Torres called Hines piece of shit cho moe, Torres went further calling Hines a "sissy, saying you can't keep running it's gone happen, speaking of more rapes & assault and eventually murder to cover-up false imprisonment and states nefarious conduct.

36.     Torres, Klin, Smith & Perry concocted a scheme, a meeting of the minds, while Hines was in cell *203, at which time inmate Drama was telling cell 202 & 205 to attack me trying to punk . . . saying a stick and a slap, should do it. Drama told 205 go at him like a pit bull, to extort and turn out an already victimized rape victim.

. . .

38.     C.O. Def. Perry told inmate Carlton Zornes, who asked Perry what yall gone do with Hines the cho moe, Perry stated, "ah he dead." Thus, a pre-planned conspired act by Def. Lisowy & Gutzmer to get Hines to CX-5 rape, assault & eventually murder, using inmates to rape Hines from CX-1, CX-2 & CX-3.

39.     A meeting of the minds took place, Def. M. Spaniol had tears in her eyes demanding I program, she was made aware of the hidden

horrors Hines would face, being brutally raped and supposedly beaten and murdered in CX-5 . . . .

40.    Torres, Klin & Perry began to aggressively attack Hines, Lt. B. Austrenge a co-conspirator, allowed these defendants to attack me. Austrenge is also a rape suspect and conspirator to commit murder.

41.    Def.'s Lisowy & Gutzmer coerced Def.'s Herme & Spaniol not to report rape(s), instead make him look crazy, using a P.S.I. report from a false imprisonment, showing Hines was only trying to show "schizophrenia" was in his family, not equated to him. Never any listed medically documented finding by any reputable psychiatrist or doctors. Hines said he was crazy to get out of this false imprisonment.

42.    Mental health Dr. Deborah MacNeill is a Dr. Hines never ever spoke with, while housed in CX-4. No one ever introduced themselves as Dr. MacNeill, and her assessment is based on 2-yrs of psychological torture to induce negative responses from Hines being raped and tortured.

43.    A meeting of the minds took place, Def. Lisowy came inside CX-4 and sat at the guards table and conspired with Def.'s Torres, Klin, Perry, Nelson, Herme, Spaniol, J. MacNeill, to push Hines out of MHU-Unit after forcing Hines into the mental health unit on 1-25-18 under threat of physical assault.

44.    Hines was kidnapped, forced by Def. Lisowy and A. Perry, V. Torres Doug Witte, John Doe taken to CX-5 cell 105 and raped by guards & inmates that were affiliated with the G.D. gangmember Drama" one tried to befriend me, saying "you came from MHU-unit with my drama, you know drama."

45.    Hines was raped over 3 months straight, every day, called nigger, under threat of assault & murder by Lisowy & Gutzmer using guards and their use of inmates cells #105, #205 and #207.

46.    The following guards are rape suspects . . . all are gay guards, who have made sexual gestures & harassment toward me. Besides Hagen, these men are security.

47.    Yet, these acts take place in MHU-Unit, where Eric Nelson the Director is also a gay employee, allowing such acts to transpire with

7

no initiative for proper investigation and reporting, security, consist of would be rape suspects, so it will always depending on who's reporting, who's investigating go unfounded, security investigates.

48. On 8/10/18 Def. Witte escorted Hines back to Complex-4; there placing Hines in cell #216 where Hines experienced rape again. Reported and again unfounded . . . . They destroyed the last blood lab STD reports . . . .

49. Mental health was asked to oblige and aid in creating a delusional disorder to cover up rape(s), and now medical has been asked to oblige and aid to cover-up the sexually transmitted diseases, before the Court, fighting me for the State. See Ex-A (1 of 12)

50. During this period of time Hines sought the help of Mr. Tom Roy . . . all State actors in positions of authority, decision making ability, policy & protocol. None was rendered. Before these conditions of confinement transpired. See (Ex H-1-4)

. . .

52. Hines was now being targeted, for that erroneous mental health diagnosis. Forced to accept, unnecessary cruelty and adverse forms of punishment by security staff, humiliated, sexually harassed.

53. Hines was told by therapist Vicki Schroeder that they were seeking civil commit by court order, Plaintiff alerted the dis. Ct. in Hines v. Smith et al, 16-cv-3797. Amended Hines v. Roy et al., 16-cv-3797.

54. In CX-5 after being raped for 3-months straight cells #105, #205, & #207 where blood & semen was found. Def. Gutzmer sexually assaulted Hines in cell #105, and told all RN'S not to assist me. Frustrated, called nigger, child molester, snitch, rapist, cho moe, gay, dick sucker, homosexual while being psychologically tortured daily. Begging for help & assistance, over 1 yr.

55. Gutzmer an aggressive homosexual guard has repeatedly opened Hines cell door on 1st shift, and sexually harassed Hones with Def. Lisowy . . . . Finding blood & semen, stopping these RN's from helping Hines with mental health campaigne [sic] "he's crazy, it never happened." . . . After being raped and witnessing Gutzmer stop, pull RN's aside, follow them talking "crazy, he is.

56.     Never once did these Defendants . . . take Hines reports of rape serious and offer mental health assistance. Instead aided rape suspects to make Hines a threat . . . . Civil Commit w/ Jarvis neuroleptic medications saying Hines is mentally ill. Ex-C (1 of 2) falsely stated.

57.     Yet, spoken after brutal and atrocious acts of rape by guards and inmates, inmates began to address Hines like he was a woman . . . . Yet, they had already raped me prior to these remarks, based on their remarks.

58.     Hines wrote Larson again and M. Hermerding responded in regards to Hines reports of RN's actions, and willingness to cover-up rape. Ex-G (1 of 1)

59.     . . . C. Thacker made false disciplinary reports, after I rejected his sexual advances, and Lisowy sanctioned Hines 30 and 60 days being totally against Hines.

60.     Both Guzmer & Lisowy used Eric Nelson & Deborah MacNeill; to re-articulate the already known false mental health diagnosis of provisional delusional disorder, persecutory type; premorbid paranoid personality distorder, antisocial personality disorder (per Deborah MacNeill, 8/14/2018). The dist. ct. validated psychological torture, in Hines v. Smith et al., 16-cv-3797. See Ex-A (1 of 12)

61.     Hines now believes several mental health workers are trying to validate a mental health issue to accommodate this erroneous civil commitment . . . while trying to stop Hines from exposing the false imprisonment, and getting out of prison, for a rape of child under 13, he never raped a child alleged victim was 49 yrs. old.

62.     RN's are hiding bio-laboratories lab results for STD's . . . . Def. Manor using this civil commitment as the mental health scapegoat, to withhold info.

63.     . . . During hearing, of Dr. Shane E. Wernsing claims validating what Dr. Deborah McNeill, and Eric Nelson placed before the Court. When he never spoke with Hines to validate their findings, because D. McNeill doesn't [illegible]

64.    Hines never spoke with Dr. Wensing because Lindsey see ex-B(1 of 4) Jennelle told Hines his first psychiatrist/Dr. was from the State. Lying and using Wernsing to validate this false claim.

65.    Dr. Wernsing testified only to hepatitis A saying it came from food.

. . .

67.    Def. Dr. Wernsing testified that [hepatitis A] came also from human waste. Hines reported in <u>Hines v. Smith et al., 16-cv-3797</u> that someone urinated in his mouth while he was unconscious, in cell #149. Also reporting rape(s).

. . .

71.    This judge ordered the administration of (5) neuroleptic see Ex-D (1 of 8) medications to a perfectly sane individual, who had been psychologically tortured 2-yrs and raped over a 1 ½ - 2 yrs. By guards and inmates, a deadly dangerous dose to cover-up false imprisonment, rape(s), & blood transfusion. Destruction of evidence.

72.    Hines is civilly committed as a mentally ill, and Dr. Wernsing said 'Resperadal' one milagram [sic]. "Seeing Hines has several legal cases he's fighting in the courts."

. . .

75.    . . . The willful acts of Defendants to use erroneous information to secure a civil commitment by court order and Jarvis forcing Hines to take medication, but refusing to offer Hines assistance for reported rape(s) and diseases . . . .
. . .

77.    Def's Smith, Rheisus would not respond being deliberate indifferent to the sexual assaults, sexually transmitted diseases, allowing these defendants to create a mental health diagnosis which was false. Ex-A (1 of 12)

78.    Hines requested . . . a copy of that file, showing these reported finding, none was rendered, because these reported mental health diagnosis didn't exist. These were created to cover-up rape, torture(s) psychologically & physically.

. . .

81.    Based on information and belief Def. Lisowy is trying to stop that rape complaint along with Def. Gutzmer. It's very detailed and under stress, trying to make Hines discuss it in other filings, talking with States attorney Kelly Kemp to argue already raised, thus denying all legal paperwork.

82.    On 10-29-2018 I wrote Diane Medchill Director for Assistance since I am not allowed to program, at all, and staff use a false claim to stop me from getting out of prison and cover-up rape.

83.    Defendants violate Hines 1st, 8th and 14th Amendment rights [by the conditions of his civil commitment].

. . .

86.    Hines is actively denied all activities, due to retaliation and threats imposed by security telling inmates Hines is a child rapist & snitch, a homosexual . . . safety risk.

. . .

88.    . . . Hines has to plan his own treatment program under threat of neuroleptic shots by RN's and Def. M. Johnson; Foster; pressuring RN's to inject Hones.

(*See* Compl.)

In addition to the allegations above, Plaintiff's Complaint contains three additional sets of factual allegations. First, Plaintiff appears to assert that he is being denied access to his legal paperwork. (*Id.* ¶¶ 79, 80, 81.) Plaintiff also alleges violations of his free exercise rights, claiming, among other things, that it is against his religion to take certain medication and that "Defendants have taken [his] Bible which had been desecrated and torn, Bible study materials and refused to allow Hines to practice his faith." (*Id.* ¶ 90; *see also id.* ¶¶ 73, 75, 76, 87.) Finally, Plaintiff alleges a violation of his right to free speech

due to Defendants' "stopping outside immediate interactive communication" by limiting his phone calls. (*Id.* ¶ 89.)

Based on the facts alleged, Plaintiff brings the following claims, some of which overlap: (1) Defendants violated Plaintiff's constitutional rights by raping him and facilitating his rape by other inmates; (2) Defendants violated Plaintiff's constitutional rights by their deliberate indifference to his medical needs; (3) Defendants violated Plaintiff's constitutional rights by having Plaintiff falsely civilly committed; (4) Defendants violated Plaintiff's constitutional rights by subjecting him to forced neuroleptic medications; (5) Defendants are engaged in a conspiracy under § 1983 to rape Plaintiff or have him raped by others and then cover up those crimes using a false mental health diagnosis, civil commitment, and administration of improper medications; and (6) Defendants violated Plaintiff's First Amendment rights by their confiscation of his personal property and legal paperwork. (*See* Compl. ¶¶ 92–104.)

Plaintiff seeks a declaratory judgment stating, among other things, that "Hines is not mentally ill, and that this civil commitment is erroneous and unlawful," and that Defendants "allowed [Plaintiff] to be raped." (*Id.* at 22.) He also seeks an injunction reversing his civil commitment, taking him off his prescribed medications, and transferring him to a different prison facility. (*Id.* at 23–25.) Plaintiff asks that the Court also enjoin Defendants from taking further actions against him related to his reports of rape, allegedly false mental health diagnosis, medication, and civil commitment. (*Id.* at 24–25.) Plaintiff seeks compensatory damages in the amount of $400,000 jointly and $50,000 severally against certain Defendants, and punitive damages in the amount of

$3,500,000,000 against all State actors, excluding certain Defendants. (*Id.* at 25–26.) Finally, Plaintiff requests recovery of his costs litigating this matter and any additional relief the Court deems equitable. (*Id.* at 27.)

## II. Analysis

State Defendants argue that Plaintiff's claims should be dismissed because (1) they are barred by the Eleventh Amendment as to State Defendants in their official capacities; (2) State Defendants in their official capacities are not "persons" subject to suit under § 1983; (3) Plaintiff's claims are barred by the *Rooker-Feldman* doctrine; (4) allegations concerning sexual assault and conspiracy are barred by collateral estoppel; (5) injunctive relief is unavailable from State Defendants in their individual capacities; (6) Plaintiff has failed to otherwise state a claim; and (7) the State of Minnesota is not a proper party defendant. (*See* Doc. No. 91, State Defs.' Mem.) Defendant Wernsing argues that Plaintiff's claims against him should be dismissed because (1) he is entitled to judicial immunity, and (2) Plaintiff failed to exhaust state remedies. (Doc. No. 68, Def. Wernsing's Mem. 2.) Plaintiff opposes these motions.

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a complaint for lack of subject-matter jurisdiction. A party contesting subject-matter jurisdiction may mount either a facial challenge or a factual challenge to a court's jurisdiction. *See Osborn v. United States*, 918 F.2d 724, 729–30 & n.6 (8th Cir. 1990). On a facial attack, the court limits its consideration to the allegations of the complaint. *Id.*

at 729 & n.6. On a factual attack, the court may consider matters outside the pleadings without converting the motion to one for summary judgment. *Id.* "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* at 730. In determining whether the plaintiff has sustained that burden, a court has the duty to construe liberally a pro se party's pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, "the Court may not supply additional facts or fashion a legal theory that assumes facts that have not been pleaded." *Benjamin v. Experian Info. Sols., Inc.*, No. 14-cv-810 (JRT/JJG), 2014 WL 3509044, at *2 (D. Minn. July 15, 2014) (citing *Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004)).

Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Under the current pleading standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555. Thus, the Court in examining a motion to dismiss must determine whether the

14

plaintiff raises a plausible claim of entitlement to relief after assuming all factual allegations in the complaint to be true. *Id.* at 558. Pro se complaints, however, "must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014). A motion to dismiss for failure to state a claim under Rule 12(b)(6) is the "appropriate vehicle" for dismissal based on res judicata. *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018).

### B.    Defendant Wernsing is Entitled to Judicial Immunity[2]

It is well established that officials whose duties are integral parts to the judicial process are entitled to absolute immunity from civil rights suits. *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir. 2005). This includes court-appointed medical examiners, who are immune from suit for preparing reports and providing counsel to the court. *Dornheim*, 430 F.3d at 925 (citing *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir.1998) (holding that a court-appointed psychiatrist "enjoyed absolute immunity for the testimony and reports . . . submitted to the court")).

Here, Defendant Wernsing's role in the matter at hand was limited to his work as a court-appointed examiner. (*See* Compl. ¶¶ 63–65, 67, 72; Doc. No. 1-1, Civil Commitment Ord. 21; Doc. No. 1-1, Wernsing Report 14–19.) Consequently, Defendant Wernsing is protected by absolute immunity from suit.

---

[2]     State Defendants argue that Judge John Hoffman, formerly a defendant in this matter, is also entitled to judicial immunity. Judge Hoffman, however, was voluntarily dismissed by Plaintiff along with six other parties on October 31, 2019. (*See* Doc. Nos. 138, 140; *see also* Doc. Nos. 142, 143 (dismissing eight additional parties).)

Plaintiff responds that (1) Defendant Wernsing is not immune to a claim for conspiracy, (2) the Eighth and Fourteenth Amendment claims against Defendant Wernsing are valid because Defendant Wernsing presented false information to the court during Plaintiff's civil commitment proceedings, and (3) this matter is properly before the Court because Plaintiff filed a state habeas claim. (Doc. No. 155, Def.'s Mem. in Opp'n 2.) Plaintiff is mistaken. First, Defendant Wernsing's judicial immunity does indeed shield him from Plaintiff's conspiracy allegations. *See Moses v. Parwatikar*, 813 F.2d 891, 892 (8th Cir. 1987) (finding court-appointed psychiatrist subject to absolute immunity, even if it was alleged that he participated in a conspiracy). Second, Defendant Wernsing is entitled to absolute immunity from Plaintiff's Eighth and Fourteenth Amendment claims precisely *because* they concern testimony he provided to the state court. *Morstad*, 147 F.3d at 744 (holding that a court-appointed psychiatrist "enjoyed absolute immunity for the testimony and reports . . . submitted to the court"). And even if Defendant Wernsing had—as Plaintiff alleges—presented false testimony to the court, that would not affect his right to absolute immunity. *See Briscoe v. LaHue*, 460 U.S. 325, 330–34 (1983) (holding that § 1983 does not abrogate absolute immunity available at common law to witnesses, even for perjured testimony). Finally, Plaintiff's argument concerning his state habeas petition is misplaced; the present matter does not arise from a federal habeas petition, so his exhaustion of state habeas remedies is irrelevant. Accordingly, this Court recommends that all of Plaintiff's claims against Defendant Wernsing be dismissed with prejudice.

**C.    Plaintiff's Claims Relating to Matters Previously Decided by the State Court in His Civil Commitment Hearing Are Barred by the *Rooker-Feldman* doctrine and *Heck v. Humphrey***

State Defendants argue that Plaintiff's claims relating to his civil commitment are facially deficient because they seek relief jurisdictionally foreclosed by the *Rooker-Feldman* doctrine, which prohibits federal district courts from exercising judgment over state court decisions, or issues that are inextricably intertwined with state court decisions. (State Defs.' Mem. 16–18.) Defendant Wernsing makes a related argument – that to the extent Plaintiff's claims challenge his civil commitment, such claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). For the reasons that follow, this Court agrees.

**1.    Plaintiff's Eighth Amendment and Conspiracy Claims, and Certain of His First Amendment Claims, are Barred by *Rooker-Feldman***

The *Rooker-Feldman* doctrine is named for two Supreme Court cases—*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *Rooker* held that federal district courts have no appellate jurisdiction over state courts and that the Supreme Court alone has such power. 263 U.S. at 416. The Supreme Court expanded on this principle in *Feldman*, holding that federal district courts have no jurisdiction over issues that are "inextricably intertwined" with a prior state court judgment. 460 U.S. at 482 n. 16, 486. "A federal claim is inextricably intertwined with a state court judgment when 'the relief requested in the federal action would effectively reverse the state court decision or void its ruling.'" *Canal Capital Corp. v. Valley Pride Pack, Inc.*, 169 F.3d 508, 512 (8th Cir. 1999) (quoting *Bechtold v.*

*City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997), and citing *Keene Corp. v. Cass*, 908 F.2d 293, 296–97 (8th Cir. 1990)).

"The *Rooker-Feldman* doctrine is narrow; it applies only to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Edwards v. City of Jonesboro*, 645 F.3d 1014, 1018 (8th Cir. 2011) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "The doctrine thus occupies a 'narrow ground' and does not 'stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" *Banks v. Slay*, 789 F.3d 919, 922 (8th Cir. 2015) (quoting *Exxon Mobil Corp.*, 544 U.S. at 284, 293).

Courts in this district have differentiated between independent claims forming the basis for the complaint and claims seeking to address an injury caused by the state court decision itself, concluding that *Rooker-Feldman* bars only the latter. *See Peet v. Associated Bank, N.A. Mendota Heights*, No. 11-cv-2544 (SRN/JJG), 2012 WL 7589401, at *4 (D. Minn. July 20, 2012), *report and recommendation adopted*, 2013 WL 717349 (D. Minn. Feb. 27, 2013), *aff'd*, 556 F. App'x 546 (8th Cir. 2014); *Milliman v. Cty. of Stearns*, No. 05-cv-2993 (JRT/RLE), 2006 WL 2583170, at *12–13 (D. Minn. Sept. 7, 2006). Moreover, while Rooker-Feldman does not bar claims arising from sources outside the state court judgment, it bars "a claim seeking redress for an injury caused by the state court decision itself – even if the basis of the claim was not asserted to the state court." *Milliman*, 2006 WL 2583170, at *13.

At least one court in this district has had the opportunity to address *Rooker-Feldman* as it relates to prior civil commitment. In *Liedtke v. Runningen*, the plaintiff brought suit in federal district court alleging that during the events leading up to her civil commitment, doctors failed to take seriously her version of events, failed to document physical trauma, relied on false reports, misdiagnosed her, and "tortured her through institutionalization." *Liedtke*, No. CV 15-3361 (JRT/HB), 2016 WL 5660455, at *1 (D. Minn. Sept. 29, 2016), *aff'd*, 697 F. App'x 468 (8th Cir. 2017). That plaintiff also alleged that a Dakota County social services worker falsified records and falsely testified during the plaintiff's civil commitment hearings. *Id.*, at *2. The magistrate judge in *Liedtke* concluded that the action against the county defendants was "essentially an appeal of the orders from her civil commitment proceedings." *Liedtke v. Runningen*, No. 15-CV-3361 (JRT/HB), 2016 WL 11491381, at *5 (D. Minn. June 20, 2016). Central to that court's reasoning was that the plaintiff "expresses her desire for this federal court litigation to result in setting aside her civil commitment orders." *Id.* The plaintiff had stated that her goal was "to approach the experts in the state court proceedings with a request that they recant their testimony based on the new evidence from this litigation." *Id.* The court concluded that the plaintiff's claims against the county defendants were "inextricably intertwined with the state court civil commitment orders" because "[t]he injuries allegedly caused by inadequate training and false testimony occurred, if at all, when and because [plaintiff] was civilly committed in reliance upon the input of Defendants." *Id.*

In a different context, another court in this district concluded that *Rooker-Feldman* barred an action against law enforcement for providing false information where a state

trial court necessarily addressed that issue. *See Franco v. Minnesota*, No. 12-cv-1706 (ADM/JJG), 2013 WL 2556510, at *7 (D. Minn. June 11, 2013). While that case did not concern a civil commitment, it did involve allegations that false and misleading information was provided to obtain a search warrant, and allegations of perjury at trial. *Id.* The district court held that the application of the *Rooker-Feldman* doctrine was "clear," observing that the allegations concerned issues the state court judge made determinations on during in camera consideration, and at trial, respectively. *Id.* The court explained that "[s]ubject-matter jurisdiction, as found in the *Rooker-Feldman* doctrine, does not allow the United States District Court to re-open these issues and second guess state court decisions." *Id.*

Courts in other jurisdictions have also reached similar conclusions within the context of federal challenges to state civil commitments. For example, the *Rooker-Feldman* doctrine has been held to bar claims that the plaintiff "was injured by the trial court's judgment ordering his civil commitment because the trial court utilized inadmissible evidence." *Oliver v. Dow*, No. 10-1542 DMC-JAD, 2011 WL 601556, at *10 (D.N.J. Feb. 17, 2011), *report and recommendation adopted*, No. CIV. 10-1542 DMC JAD, 2011 WL 3703699 (D.N.J. Aug. 23, 2011). Elsewhere, a civilly committed plaintiff argued the defendants violated his Sixth, Eighth, and Fourteenth Amendment rights when he was committed after a jury heard untruthful statements regarding his prior criminal record. *Burr v. Jones*, No. 3:07CV318/MCR/EMT, 2007 WL 2900347, at *1 (N.D. Fla. Oct. 2, 2007). That court concluded that *Rooker-Feldman* barred his claims and the court could not reverse his civil commitment. *Id.* at *2.

Here, State Defendants raise a factual challenge to subject-matter jurisdiction stemming from Plaintiff's civil commitment proceedings. Specifically, State Defendants argue the Court lacks subject-matter jurisdiction under the *Rooker-Feldman* doctrine as to all claims arising out of or inextricably intertwined with Plaintiff's civil commitment because in those claims Plaintiff is effectively requesting the Court sit in judgment of, and overrule conclusions reached by, the state court in its civil commitment proceedings. (*See* Def.'s Mem. 16–18.) For the following reasons, this Court agrees.

Plaintiff's present lawsuit is largely—though not wholly—an appeal of the order resulting from his civil commitment proceedings. In the lengthy factual allegations in his Complaint, Plaintiff repeatedly expresses his belief that those proceedings were a fraud, the result of a conspiracy to cover up a pattern of sexual assault and abuse Plaintiff alleges he previously suffered while in custody. (*See* Comp. 6–21.) Moreover, Plaintiff explicitly requests that the Court issue a declaration stating that he "is not mentally ill, and that this civil commitment is erroneous and unlawful" and that "unfounded false information was used" in the civil commitment proceedings. (*Id.* at 22.) Further, he asks the Court to declare that the acts of certain Defendants violated his rights by participating in his civil commitment, and that Defendants "allowed [Plaintiff] to be raped." (*Id.* at 22.) Plaintiff requests an injunction reversing his civil commitment and prohibiting Defendants from providing him with medication. (*Id.* at 23.)

Importantly, Plaintiff's allegations concerning sexual assaults prior to his civil commitment, as well as his claims concerning a conspiracy among facility staff to cover up those claims via a false mental-health diagnosis, civil commitment, and administration

21

of improper medication are inextricably intertwined with the state court's order in

Plaintiff's commitment proceedings. That court found that Plaintiff "suffers from a major

mental illness, specifically, Delusional Disorder, persecutory type, which constitutes an

organic disorder of the brain or a substantial psychiatric disorder of thought, mood,

perception, orientation, or memory which grossly impairs judgment, behavior, capacity to

recognize reality, or to reason or understand." (Ord. for Commitment 22.) It further

determined that Plaintiff's "mental illness has manifested itself by the following instances

of grossly disturbed behavior or faulty perceptions: [he] suffers from persistent paranoid

delusions, specifically, that he believes that he is repeatedly being raped by prison staff

and that anyone working for the 'state' is conspiring against him." (*Id.*) Further, the state

court determined that Plaintiff "does not have the capacity to made [sic] decisions

regarding the administrations of neuroleptics . . . as demonstrated by the Respondent's

paranoid delusional thought process and his lack of insight into his mental illness." (*Id.* at

24.)

    In making these determinations, the state court had the opportunity to review

evidence concerning Plaintiff's claims that he was subjected to a pattern of rape and

abuse, including submissions from the staff treating him.[3] Under the *Rooker-Feldman*

---

[3]    (*See, e.g.*, Doc. No. 1-1, Pet. For Judicial Commitment 7–8 (stating Plaintiff
"repeatedly reported that he has been sexually abused by staff and feels that staff are not
protecting him from harm/preventing his ongoing abuse," but that "there is no physical
evidence that aligns with his reports"); Doc. No. 1-1, Pet. for Authorization to Impose
Treatment 9 (listing Plaintiff's diagnosed mental disorders and proposed treatment); Doc.
No. 1-1, Pre-Pet. Screening Report 10 (stating Plaintiff "believes that he is routinely
being sexually assaulted by staff" but that medical exams have produced "no evidence"

Footnote Continued on Next Page

doctrine, this Court lacks jurisdiction to revisit those proceedings, to set aside the state court's orders, or to compel the state court itself to do so. This Court concludes that *Rooker-Feldman* bars all of Plaintiff's claims concerning (1) his allegations of sexual assault leading up to his civil commitment; (2) a conspiracy among Defendants to cover up the alleged sexual assaults by having Plaintiff falsely diagnosed, civilly committed, and improperly medicated; and (3) the civil commitment itself, including the state court's order concerning Plaintiff's treatment, medication, and conditions of confinement.

In addition, Plaintiff's First Amendment claims related to his alleged religious objections to taking his prescribed medication are barred by the *Rooker-Feldman* doctrine. (*See* Compl. ¶¶ 73, 75, 76.) The record shows that question was also taken up and decided by the state court during Plaintiff's civil commitment proceedings. (*See* Ord. for Commitment 24, 26 (stating "[t]he record reflects no social, cultural or religious reasons that would constitute a basis for the Respondent's objection to the use of such medication" and that "[t]aking into consideration the Respondent's family, community, moral, religious, and social values . . . the administration of neuroleptic medications is what a reasonable person would accept as a proper course of treatment").)

---

to support his reports); Doc. No. 1-1, Examiner's Statement in Support of Pet. for Commitment 13 (stating Plaintiff "continues to report that he is being sexually assaulted during the night, that it is a conspiracy involving the Department of Corrections and others"); Doc. No. 1-1, Wernsing Letter 17 (stating Plaintiff "is being tormented by his delusional beliefs that he is being raped nearly nightly").)

2.    **Plaintiff's First Amendment, Eighth Amendment, and Conspiracy Claims are Barred by *Heck* to the Extent They Challenge his Civil Commitment**

Plaintiff's claims, insofar as they seek to call into question his civil commitment, are also precluded by *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny. *Heck* concerned a state prisoner's allegations that officials involved in his prosecution had conducted an unlawful investigation, destroyed exculpatory materials, and introduced illegal evidence at trial. *Id.* at 479. Having concluded that "the common law of torts . . . provide[s] the appropriate starting point for the inquiry under [§ 1983]," the Supreme Court decided that the closest common-law cause of action to the prisoner's claims was malicious prosecution. *Id.* at 483–84 (citation omitted). "One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Id.* at 484. Thus, the prisoner's conviction—which was still valid—rendered his claims "not cognizable under § 1983." *Id.* at 484, 487. A contrary rule would have posed the risk of creating "parallel litigation" which would undermine both "finality and consistency." *Id.* at 484–85.

The Eighth Circuit recently adopted *Heck*'s rationale in the context of a prisoner challenging his civil commitment. *Thomas v. Eschen*, 928 F.3d 709, 711–13 (8th Cir. 2019). That court reasoned that "[c]ourts have long recognized" the right of plaintiffs to sue those who pursue unfounded proceedings to have them declared insane for malicious prosecution. *Id.* at 711 (citation omitted). Prior to bringing such an action, however, the plaintiff must first prove that the underlying proceeding—e.g., the civil commitment—was resolved in his favor. *Id.* at 712. Thus, the Eighth Circuit concluded that so long as a

state court judgment ordering a plaintiff's civil commitment stands, "he cannot proceed with his wrongful-commitment claim." *Id.* at 713 (citing *Heck*, 512 U.S. at 486–87.)

To the extent Plaintiff's present claims are a challenge to his civil commitment, they are barred by *Heck*. It is true that Plaintiff frames his attack on his commitment as a challenge to a conspiracy among Defendants to sexually abuse him and then cover up their crimes, but here, as in *Thomas v. Eschen*, Plaintiff's "real complaint is that he never should have been committed in the first place." 928 F.3d at 713. However, because Plaintiff has failed to successfully pursue state proceedings to have his civil commitment reversed and consequently the state court's civil-commitment order remains valid, Plaintiff is barred from proceeding with a wrongful-commitment claim at this time. *Id.* (quoting *Heck*, 512 U.S. at 486–87.) To hold otherwise would undermine finality and consistency and encourage parallel litigation. *Heck*, 512 U.S. at 484–85.

### 3.    Conclusion

In sum, because it concludes that it lacks jurisdiction over all claims barred by the *Rooker-Feldman* doctrine and *Heck v. Humphrey*, this Court recommends that such claims be dismissed as to all Defendants. Specifically, this Court recommends that Plaintiff's Eighth Amendment and conspiracy claims be dismissed without prejudice. This Court also recommends that the subset of First Amendment claims concerning matters decided in the state civil-commitment proceedings be dismissed without prejudice. In the alternative, however, Plaintiff's First Amendment, Eighth Amendment, Fourteenth Amendment, and conspiracy claims should be dismissed for the reasons that follow.

**D.    Plaintiff's Eighth Amendment and Conspiracy Claims Should be Dismissed as Legally Frivolous Under 28 U.S.C. § 1915(e)(2)(B)(i)**

This case was initially screened and allowed to proceed pursuant to 28 U.S.C. § 1915A. (*See* Doc. No. 3, 1/3/19 Ord.) This initial screening—which is necessarily limited—does not, however, preclude the Court from applying its inherent authority to dismiss a case pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), if the Court concludes the action is legally frivolous. That statute provides that "[n]otwithstanding any filing fee, or portion thereof, that may have been paid, the court *shall* dismiss the case *at any time* if the court determines that" the action or appeal is frivolous. 28 U.S.C. § 1915(e)(2)(B)(i) (emphasis added). An action is frivolous if it lacks "an arguable basis either in law or in fact" – if it is based on an "indisputably meritless legal theory" or factual allegations that are so "fanciful," "fantastic," or "delusional" as to be "clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 325, 327–28 (1989); *see also Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (explaining that courts may dismiss a claim as factually frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible").

Any rape allegation is a serious matter. Accordingly, this Court has carefully studied Plaintiff's allegations in his Complaint as well as the documents attached thereto as Exhibit A. *See Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (stating that courts may consider, among other things, exhibits attached to a complaint) (citation omitted). In this case, it is apparent that Plaintiff's Complaint "rise[s] to the level of the irrational" and is thus legally frivolous. *Denton*, 504 U.S. at 33. Plaintiff alleges not only that he was raped, but that he was repeatedly raped by both guards and inmates at MCF-

OPH. Graphic descriptions provided by Plaintiff offer impossible scenarios. (*See, e.g.*, Doc. No. 1-1, Pl.'s Letter to Def. Roy 49.) His claims, however, do not end there. Plaintiff further alleges that the prison guards, certain prison administrators, and medical staff conspired to cover up these rapes by having Plaintiff diagnosed as mentally ill, civilly committed, and placed on a regimen of improper medication. (*See infra* 5–11.) Plaintiff maintains that the court-appointed examiner in his civil commitment proceedings—who was not an employee of MCF-OPH and had never met Plaintiff prior to his appointment by the state court—was also a party to this conspiracy, and that the evidence presented to the state court concerning Plaintiff's diagnosis was false.

Viewing the Complaint and the attached documents as a whole, it is apparent that Plaintiff's Eighth Amendment and conspiracy claims are grounded in delusion. *See Reath v. Weber*, 2012 WL 4068629, *1 (D. S.D. September 14, 2013) (dismissing prisoner's claim that he was the victim of a conspiracy to sexually assault him as legally frivolous where "[t]he factual allegations . . . cross[ed] the boundary from the unlikely into the delusional"). Accordingly, this Court recommends that Plaintiff's Eighth Amendment and conspiracy claims be dismissed without prejudice as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

### E.    Failure to State a Claim

The Court now examines Plaintiff's First Amendment, Fourteenth Amendment, and conspiracy claims pursuant to Rule 12. Both State Defendants and Defendant Wernsing argue that Plaintiff's Complaint violates Rule 8 because it fails to state a claim upon which relief may be granted. To survive a motion to dismiss under Rule 12(b)(6), a

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this pleading standard, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555. Thus, the Court in examining a motion to dismiss must determine whether the plaintiff raises a plausible claim of entitlement to relief after assuming all factual allegations in the complaint to be true. *Id.* at 558.

### 1.    Plaintiff's First Amendment Claim

Plaintiff alleges violations of his right to free exercise under the First Amendment. (*See* Compl. ¶¶ 87, 90.) Specifically, Plaintiff alleges (1) he is being denied his religious property (including a Bible and Bible-study materials); (2) Defendants have damaged his Bible; and (3) he is being denied his right to Bible study.[4] (*Id.*) Second, Plaintiff alleges that Defendants have prevented him from accessing his legal paperwork. (*See* Compl. ¶ 79.) Finally, Plaintiff asserts that restrictions placed on his phone privileges since he was civilly committed violate his right to free speech under the First Amendment. (*Id.* ¶ 87, 89.)

Defendants do not address these claims individually in their motions to dismiss, but this Court observes that none of the factual allegations underlying these complaints

---

[4]    Plaintiff also alleges the administration of neuroleptic medications is against his religious beliefs. However, as explained above, because that question was decided by the state court, Plaintiff is precluded from raising it here under *Rooker-Feldman*. (*See infra* 24–25.)

28

identify *which* Defendants are responsible for the actions Plaintiff complains of. A plaintiff must plead "factual content that allows the court to draw the reasonable inference *that the defendant is liable for the misconduct alleged*." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (emphasis added). Specifically, a plaintiff must plead facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While it is true that *pro se* pleadings "must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties," here, Plaintiff originally brought suit against almost one hundred Defendants, of which sixty-seven now remain. *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014). It defies credulity that all sixty-seven of the remaining Defendants could be responsible for the alleged infringements on Plaintiff's religious liberty, access to the courts, and free speech, and this Court will not engage in speculation as to which Defendants these allegations concern. Consequently, this Court recommends that these First Amendment claims be dismissed without prejudice.

### 2. Plaintiff's Fourteenth Amendment Claim

To prevail in an equal-protection claim under the Fourteenth Amendment, a Plaintiff must show that the treatment complained of was "invidiously dissimilar" to that received by other similarly situated inmates. *Peck v. Hoff*, 660 F.2d 371, 372 (8th Cir. 1981); *Flittie v. Solem*, 827 F.2d 276, 281 (8th Cir. 1987). Broad claims that one was treated unfairly, without more, are insufficient to support such a claim. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *Aldaco v. Holder*, No. CIV. 10-590 JRT/LIB, 2011 WL

825624, at *10 (D. Minn. Jan. 7, 2011) ("Plaintiff has not alleged any facts showing that he was treated differently from other inmates because he belonged to a protected class.").

Here, Plaintiff's lone allegation related to his equal-protection claim is that other unidentified inmates who are "similarly situated" enjoy unspecified programming and benefits while Plaintiff's civil commitment precludes him from such enjoyment. (Compl. ¶ 98.) Such a vague, conclusory assertion is insufficient to state a claim for relief under the Fourteenth Amendment. Accordingly, this Court recommends that Plaintiff's Fourteenth Amendment claim be dismissed without prejudice.

### 3.    Plaintiff's Conspiracy Claim

Even if Plaintiff's conspiracy claim is not dismissed under *Rooker-Feldman* and *Heck*, or as legally frivolous under 28 U.S.C. § 1915(e)(2)(B)(i), it should still be dismissed because Plaintiff has failed to state a claim upon which relief may be granted. A conspiracy claim under § 1983 requires a plaintiff to show that (1) a defendant conspired with others to deprive him of one or more constitutional rights; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured him. *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citation omitted). The plaintiff must also prove an actual deprivation of a constitutional right or privilege. *Id.* (citation omitted). A conspiracy claim under § 1983 "requires allegations of specific facts tending to show a meeting of the minds among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) (internal quotation marks and citation omitted)

Here, Plaintiff's conspiracy claim fails for two reasons. First, Plaintiff's conclusory statements asserting a "meeting of the minds" are insufficient to state such a claim. *Iqbal*, 556 U.S. at 678 (stating "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'") (quoting *Twombly*, 550 U.S. at 555). (*See* Compl. ¶¶ 36, 39, 43.) Second, Plaintiff's allegations concerning a conspiracy to rape him repeatedly and then cover up those crimes by having him falsely diagnosed as mentally ill, civilly committed, and placed on a regimen of improper medication lack factual support and are not ultimately plausible. *Twombly*, 550 U.S. at 556–57 (stating that "parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality"). For these reasons, this Court recommends that Plaintiff's § 1983 conspiracy claim be dismissed without prejudice. [5]

### E.    Plaintiff's Motions

Ordinarily, Rule 15(a) of the Federal Rules of Civil Procedure counsels that "leave to [to amend a complaint] shall be given when justice so requires." It is also common

---

[5]    This Court concludes that (1) it lacks subject-matter jurisdiction over all claims relating to the order of the state court in Plaintiff's civil commitment proceedings; (2) Defendant Wensing is entitled to judicial immunity; (3) Plaintiff's Eighth Amendment and conspiracy claims should be dismissed as frivolous; and (4) Plaintiff's First Amendment, Fourteenth Amendment, and conspiracy claims should be dismissed for failure to state a claim. Because this Court concludes that, in the final analysis, none of Plaintiff's claims survive, it declines to address the parties' arguments concerning collateral estoppel, Eleventh Amendment immunity, whether State Defendants are "persons" subject to suit under § 1983, or the availability of injunctive relief. The State of Minnesota was voluntarily dismissed by Plaintiff on October 8, 2019 (Doc. Nos. 138, 140), thus this Court need not address whether it is a proper party defendant.

when dismissing a case under § 1915(e)(2)(B)(i) to permit a *pro se* plaintiff an opportunity to amend his complaint, but it is not required. *See, e.g.*, *Beane v. Hennepin Cty. Jail*, No. CIV. 15-205 DWF/BRT, 2015 WL 4545374, at *6 (D. Minn. July 27, 2015) (dismissing claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and denying leave to amend) (citing *Plymouth Cnty., Iowa v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014)). A court may deny leave to amend when that amendment would be futile *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001).

Plaintiff has two pending motions before the Court: (1) Motion for Leave to File a First Amended Complaint (Doc. No. 141 ("Mot. to Amend")); and (2) Plaintiff's Motion to Present Exhibit B (Doc. No. 153). State Defendants have filed a memorandum opposing Plaintiff's motion for leave to amend. (*See* Doc. No. 150, State Defs.' Mem. in Opp'n.) For the reasons that follow, this Court concludes that both Plaintiff's motions should be denied.

### 1.    Plaintiff's Motion to Amend Should be Denied as Futile

A futility challenge to a motion to amend a complaint is successful where "claims created by the amendment would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted." *DeRoche v. All Am. Bottling Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998); *see also Lunsford v. RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008) (stating that a motion to amend is futile if the amended complaint would not survive a motion to dismiss). "'Likelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous.'" *Cohen v. Beachside Two-I Homeowners' Ass'n*, No. Civ. 05-

706 (ADM/JSM), 2005 WL 3088361, at *13 (D. Minn. Nov. 17, 2005) (quoting *Becker*, 191 F.3d at 908).

Plaintiff's motion to amend seeks to add allegations that he alleges "plausibly support all of the elements of the state law tort claims." (Mot. to Amend 2.) A review of the Amended Complaint, however, reveals that Plaintiff's proposed amendments to his factual allegations are largely confined to grammatical edits and minor clarifications.[6] The Amended Complaint also removes references to Defendants whom Plaintiff has voluntarily dismissed from this case. (*See, e.g.*, Doc. No. 141-1, Amended Compl. ¶¶ 60–61 (removing references to Jessica Buberl); Doc. Nos. 142, 148, Notices of Voluntary Dismissal.) None of these edits address the critical failings of Plaintiff's Complaint addressed above, namely that (1) Defendant Wernsing should be dismissed because he is shielded from suit by judicial immunity; (2) all claims seeking to challenge or inextricably intertwined with the state court's civil commitment order are barred by *Rooker-Feldman* and *Heck*; (3) Plaintiff's Eighth Amendment and conspiracy claims

---

[6]    For example, Plaintiff's Complaint alleges:

> Torres, Klin & Perry began to aggressively attack Hines, Lt. B. Austrenge a co-conspirator, allowed these defendants to attack me. Austrenge is also a rape suspect and conspirator to commit murder.

(Compl. ¶ 40.) Plaintiff's proposed Amended Complaint, however, states:

> *Defendants* Torres, Klin *and* Perry began to aggressively attack *me*. *Def.* B. Austrenge a co-conspirator, allowed these defendants to attack me. Austrenge *was over MHU-Unit Security, and* is also a rape suspect and conspirator [ ].

(Doc. No. 141-1, Amended Compl. ¶ 35 (emphasis added).)

should be dismissed as legally frivolous; and (4) Plaintiff's First Amendment, Fourteenth Amendment, and conspiracy claims should be dismissed for failure to state a claim.

Plaintiff's proposed amendments to his claims for relief fare no better. His amended first count is still wholly concerned with "Defendants knowingly and willfully with evil intent us[ing] a court of law . . . to civilly commit Plaintiff, Mr. Hines . . . over my free exercise 1st. Amendment rights." (Amended Compl. ¶ 88.) The second count focuses on an Eighth Amendment claim concerning the sexual assaults Plaintiff believes he suffered and Defendants' alleged conspiracy to commit, cover up, and indifference thereto, resulting in Plaintiff's eventual civil commitment. (*Id.* ¶¶ 93–98.) Amended count three still focuses on the alleged "meeting of the minds" among Defendants to have Plaintiff civilly committed to cover up his reports of rape without adducing facts sufficient to demonstrate a conspiracy. (*Id.* ¶¶ 99–105.) Amended counts four (intentional infliction of emotional distress), five (negligent infliction of emotional distress), six (assault and battery), and seven (breach of duty) are state causes of action, again grounded in Plaintiff's theory that Defendants subjected him to repeated sexual assaults and then covered up their crimes by having him falsely diagnosed as mentally ill and civilly committed. (*Id.* at 28–33.) As explained above, all such claims are barred by the *Rooker-Feldman* doctrine and *Heck v. Humphrey*. Even were that not the case, this Court has also concluded that those claims should be dismissed as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). Accordingly, this Court finds that granting Plaintiff's motion to amend would be futile and recommends that it be denied.

34

**2.      Plaintiff's Motion to Present Exhibit B Should be Dismissed as Moot**

Plaintiff seeks leave to present medical records from MCF-OPH that he asserts lend further credence to his claims that Defendants covered up the rapes he believes he suffered by refusing him medical treatment and placing false information in his file. (*See* Mot. to Present Ex. B 1.) Plaintiff claims these supplemental documents show "Defendants acts to cover it up, rape(s)." (*Id.*) A careful review of the record in this matter, however, demonstrates that Plaintiff has already filed his Exhibit B with the Court. (*See* Doc. No. 154, Pl.'s Mem. in Opp'n 9–12.) Accordingly, Plaintiff's motion should be denied as moot.

## III.    Recommendation

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.      The Motion to Dismiss by Defendant Shane E. Wernsing (**Doc. No. 66**) be **GRANTED**, in that:

    a.  Plaintiff's claims against Defendant Wernsing be **DISMISSED WITH PREJUDICE**;

2.      The Motion to Dismiss by State Defendants (**Doc. No. 88**) be **GRANTED**, in that:

    a.   Plaintiff's claims against State Defendants be **DISMISSED WITHOUT PREJUDICE**;

    b.  Plaintiff's claims against Defendants Lon Augdahl, Stephan Cranna, and Deborah MacNeill be **DISMISSED WITHOUT PREJUDICE**;

3.      Plaintiff's Motion for Leave to File a First Amended Complaint **(Doc. No. 141)** be **DENIED** as futile;

4.      Plaintiff's Motion to Present Exhibit B Attached to Memo of Law **(Doc. No. 153)** be **DENIED** as moot; and

5.      Plaintiff's Complaint **(Doc. No. 1)** be **DISMISSED** and judgment entered accordingly.

Dated: January 31, 2020.                    *s/ Becky R. Thorson*
                                            BECKY R. THORSON
                                            United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).